| | |
|---|---|
| GEORGE T. KELLY, III, and, <br> THOMAS BOOGHER, individually and <br> on behalf of all others similarly situated, <br> <br> Plaintiffs, <br> <br> v. <br> <br> THE ALIERA COMPANIES, INC., <br> et al., <br> <br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. 6:20-cv-05038-MDH <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## ORDER

Before the Court is Defendant Aliera's Motion to Dismiss or Alternatively, to Compel Arbitration (Doc. 38); Defendant Trinity Healthshare, Inc.'s Motion to Dismiss Claims and Compel Mediation and Individual Arbitration or, in the Alternative, Dismiss Claims and Stay Remaining Litigation (Doc. 39); and Defendants' Motion to Stay (Doc. 43).[1] Defendants argue that Plaintiffs' claims are covered by a mediation and/or arbitration provision included within the parties' written agreement and ask the Court to compel mediation, or individual arbitration, and dismiss the lawsuit pursuant to 9 U.S.C. §§ 2-4. Defendants also move to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(1) and (6). Plaintiffs oppose the motions arguing arbitration clauses are illegal in insurance agreements and that they have properly pled that the plans qualify as insurance making the dispute resolution procedure unenforceable. Plaintiffs also argue the parties did not mutually agree to the dispute resolution agreement raised by Defendants. For the reasons set forth herein, the Court denies the pending motions.

---

[1] Defendants' Motion to Stay (Doc. 43) discovery in this case pending a ruling on the motions to dismiss (Docs. 38 and 39) is found moot in light of the Court's rulings in this Order.

## INTRODUCTION

Plaintiffs have filed their second amended class action complaint against Defendants Aliera and Trinity alleging Defendants sold unfair and deceptive health care plans to Missouri residents and failed to provide the coverage the purchasers believed they would receive. (See Doc. 30).[2] Plaintiffs allege the plans sold by Defendants qualify as insurance under both federal and state law. Defendants contend their plans are Health Care Sharing Ministries ("HCSMs") and therefore do not qualify as insurance.

Plaintiffs purchased and became members of Defendants' plan. They state that in exchange for their monthly premiums they were to receive benefits for medical coverage. However, Plaintiffs claim, in part, after paying their monthly premiums they were denied healthcare coverage. Plaintiffs allege the plans were sold without authorization, that they fail to provide the essential health benefits, that they exclude coverage for pre-existing conditions, and other failures in violation of the Patient Protection and Affordable Care Act ("ACA"). Plaintiffs also allege the binding arbitration procedure is illegal and that the dispute resolution procedures are unconscionable.

As set forth in Plaintiffs' complaint, in order to qualify as an HCSM under the ACA, an entity must meet rigid requirements, including, but not limited to: "1) it must be recognized as a 501(c)(3) tax exempt organization; 2) its members must share a common set of ethical or religious beliefs and share medical expenses among members according to those beliefs; and 3) it must have been in existence at all times since December 31, 1999." 26 U.S.C. § 5000A(d)(2)(B)(ii). See Doc. 30, ¶ 9. Plaintiffs allege Defendants were not in existence until 2018 and do not require

---

[2] For purposes of analyzing the pending motions the allegations of the complaint are summarized here for the Court's analysis. (See Doc. 30).

members to adhere to stated ethical or religious beliefs. Plaintiffs claim Defendants cannot be recognized as an HCSM nor has a federal agency ever provided Defendants with a letter of recognition as an HCSM.

The State of Missouri exempts HCSMs from regulation under Missouri insurance law but the plan must qualify as an HCSM under Missouri statute. Plaintiffs allege to qualify as an HCSM Defendants must limit its membership to those of a similar faith; act as an organizational clearinghouse for information between members; provide financial or medical needs of a member through gifts directly from one member to another (or establish a trust solely for the benefit of a member); provide monthly statements, and other requirements that Defendants have not met.

Plaintiffs allege Defendants falsely represented Trinity as an HCSM in order to avoid state insurance protection statutes; that the plans qualify as health insurance under Missouri law; and that the plans are illegal and unauthorized products. Plaintiffs also allege the plans constitute illegal contracts, including a challenge to the validity of the Member Guide's arbitration clause. Plaintiffs' complaint seeks declaratory and injunctive relief to prevent Defendants from continuing to create, market, sell, and administer unauthorized and illegal health insurance plans in Missouri and seeks rescission of the plans, reimbursement of the payments made, and/or damages related to uncovered health care expenses and other losses. Plaintiffs also seek damages under the Missouri Merchandising Practices Act. Finally, Plaintiffs seek restitution and imposition of a constructive trust.

Defendants move to dismiss the claims and compel mediation or individual arbitration, or in the alternative, stay this case pending mediation or arbitration. Defendants allege the parties' agreements contain a binding mediation and arbitration clause as set forth in their Member Guide. Defendant Aliera argues the claims should be dismissed because Plaintiffs did not comply with

the dispute resolution procedures. In addition, Defendant Trinity argues that Plaintiff Boogher lacks standing to bring a claim against Trinity; that Plaintiffs' claims for violations of the Missouri Merchandising Practices Act fail to state a claim; and that Plaintiffs' claims for breach of fiduciary duty and unjust enrichment should also be dismissed. (Doc. 40).

**STANDARD**

1. **Dispute Resolution Clause**

The Supreme Court has stated that arbitration is a matter of contract and a party cannot be required to submit a dispute to arbitration if he did not agree to submit it. *Int'l Ass'n of Bridge, Structural, Ornamental & Reinforcing Ironworkers, Shopman's Local 493 v. EFCO Corp. & Const. Products*, 359 F.3d 954, 955-56 (8th Cir. 2004); citing *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). The Court must first determine whether there is a valid and binding arbitration agreement between the parties. That issue is a matter of contract. See *Newspaper Guild of St. Louis, Local 36047, TNG-CWA v. St. Louis Post Dispatch*, LLC, 641 F.3d 263, 266 (8th Cir. 2011) (internal citation omitted). When deciding whether to compel arbitration, the Court must first ask whether a valid agreement to arbitrate exists between the parties. *Id.* The Court "must engage in a limited inquiry to determine whether a valid agreement to arbitrate exists between the parties and whether the specific dispute falls within the scope of that agreement." *Express Scripts, Inc. v. Aegon Direct Mktg. Servs., Inc.*, 516 F.3d 695, 699 (8th Cir. 2008) (internal citation omitted).

Pursuant to the Federal Arbitration Act (FAA), a party to a written agreement to arbitrate may move the Court for an order compelling arbitration. *Koch v. Compucredit Corp.*, 543 F.3d 460, 463 (8th Cir. 2008). The Eighth Circuit has stated: "The purpose of the FAA is 'to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible.'"

4

*Id.,* citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). As a result, the Court should "consider only issues relating to the making and performance of the agreement to arbitrate" and the issue is presumptively committed to judicial determination, because "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Id.* (internal citations omitted).

However, parties can agree to arbitrate "gateway" questions of "arbitrability," such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy. *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–69, 130 S. Ct. 2772, 2777, 177 L. Ed. 2d 403 (2010). If a party challenges the delegation provision specifically, Courts may address that issue, otherwise a Court must treat the arbitration provision as valid leaving any challenge to the validity of the Agreement as a whole for the arbitrator. *Id.* at 72. Under the FAA, an arbitration agreement must be enforced if: 1) the parties entered into a written agreement to arbitrate claims; 2) the transaction has a nexus to interstate commerce; and 3) the arbitration clause encompasses the claims. 9 U.S.C. § 2.

**2. Federal Rule Civil Procedure 12(b)1 and 12(b)(6)**

"In order to properly dismiss [a case] for lack of subject matter jurisdiction under Rule 12(b)(1), the complaint must be successfully challenged on its face or on the factual truthfulness of its averments." *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993) (internal citations omitted). In a facial challenge to jurisdiction, all of the factual allegations concerning jurisdiction are presumed to be true and the motion is successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction. *Id.* (internal citations omitted).

"To survive a motion to dismiss [under 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v.*

5

*Iqbal*, 556 U.S. 662, 678 (2009). A complaint is facially plausible where its factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plaintiff must plead facts that show more than a mere speculation or possibility that the defendant acted unlawfully. *Id.*; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While the Court accepts the complaint's factual allegations as true, it is not required to accept the plaintiff's legal conclusions. *Ashcroft*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

The court's assessment of whether the complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft*, 556 U.S. at 679. The reviewing court must read the complaint as a whole rather than analyzing each allegation in isolation. *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009).

**DISCUSSION**

**1. Dispute Resolution Clause**

Defendants move to compel Plaintiffs to mediate and arbitrate their claims pursuant to the alleged binding dispute resolution clause contained in the Member Guide. Defendants' Member Guide contains a dispute resolution section that requires members to first appeal any dispute through Trinity HealthShare. Doc. 30-2. The Member Guide further states that if the member disagrees with the Final Appeal Panel then the matter shall be resolved by first submitting the disputed matter to mediation. If the dispute is not resolved in mediation, the Member Guide states that the matter will be submitted to legally binding arbitration in accordance with the Rules and Procedure of The American Arbitration Association. *Id.* The mediation and arbitration provision further states this is the sole remedy for any controversy or claim arising out of the Sharing

6

Guidelines and that the members expressly waive their right to file a lawsuit in any civil court against one another for such disputes. *Id.* Defendants argue Plaintiffs' claims should be dismissed because they failed to mediate their claims pursuant to the Member Guide, but if not dismissed they should at a minimum be compelled to submit their claims to arbitration. The Court reviews the terms of the Member Guide as a whole regarding whether there is a valid agreement between the parties.

When deciding whether to compel arbitration, the Court must first ask whether a valid agreement to arbitrate exists between the parties. *Newspaper Guild of St. Louis, Local 36047, TNG-CWA v. St. Louis Post Dispatch, LLC*, 641 F.3d 263, 266 (8th Cir. 2011) (internal citation omitted). The Court "must engage in a limited inquiry to determine whether a valid agreement to arbitrate exists between the parties and whether the specific dispute falls within the scope of that agreement." *Express Scripts, Inc. v. Aegon Direct Mktg. Servs., Inc.*, 516 F.3d 695, 699 (8th Cir. 2008) (internal citation omitted). Arbitration is a matter of contract, and "arbitrators derive their authority to resolve disputes only because the parties have agreed" to it. *Id.* at 700. If an agreement does exist, the Court can determine whether the dispute falls within the scope of that agreement. *United Steelworkers of Am. v. Duluth Clinic*, Ltd., 413 F.3d 786, 788 (8th Cir.2005). Further, unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator. *AT & T Technologies, Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649, 106 S. Ct. 1415, 1418, 89 L. Ed. 2d 648 (1986).

First, Plaintiffs argue Defendants' plans qualify as insurance under Missouri law and as a result any arbitration clause is unenforceable. Under Missouri law, arbitration clauses in insurance agreements are void and unenforceable. See § 435.350 R.S.Mo; § 376.1378.4 R.S.Mo.

Defendants contend the issue regarding whether the plans qualify as insurance does not control the pending motion, rather, whether a valid arbitration agreement was formed is the dispositive issue. This Court agrees. Whether the plans qualify as insurance cannot be determined until resolution of Defendants' pending motion regarding whether the parties have an enforceable agreement to mediate/arbitrate.

Plaintiffs argue regardless of whether the plans qualify as insurance Defendants must still prove that a valid and enforceable agreement to arbitrate exists. If the agreement lacks offer, acceptance, and bargained for consideration it is unenforceable. *See Shockley v. Prime Lending,* 929 F.3d 1012, 1017 (8th Cir. 2019). Plaintiffs argue the enrollment forms they electronically signed do not contain an arbitration clause and therefore they did not agree to the dispute resolution terms. See Docs. 38-2; 38-4; 38-6. Further, the online forms they signed repeatedly state that the document they were signing was not a contract. *Id.* In addition, Plaintiffs argue the dispute resolution terms cannot constitute a valid enforceable agreement because the arbitration clause is only binding on Plaintiffs ("sharing members … expressly waive their right to file a lawsuit…") and not Defendants. Finally, Plaintiffs argue the Explanation of Benefits ("EOBs") they receive from Defendants refer the member only to the Missouri Department of Insurance.[3]

Defendant Aliera argues in its motion to dismiss or compel arbitration that Trinity "never assumes any contractual obligation and takes no responsibility to pay for any member's medical expenses from its own funds." Doc. 38. Aliera further argues that is not an HCSM and instead its subsidiaries have contracted with Trinity to market memberships. Defendants argue Plaintiffs agreed to arbitrate based on the terms of the Member Guide and that the issues raised by Plaintiffs

---

[3] Plaintiffs also present an argument that the arbitration clause is unenforceable because it is unconscionable which the Court does not address in this Order based on its other findings.
8

should be determined by an arbitrator not the Court. Defendants state mutual written assent to arbitrate exists. However, Defendants' reliance on *Strain v. Murphy Oil USA, Inc.*, No. 6:15-CV-3246-MDH, 2016 WL 540810, at *3 (W.D. Mo. Feb. 9, 2016) and *Coleman v. Bristol Care, Inc.* No. 6:18-cv-04069-MDH, 2018 WL 3848821, at *2 (W.D. Mo Aug. 13, 2018) is inapplicable here. In *Strain* and *Coleman*, there was evidence before the Court that the Plaintiffs had signed the arbitration agreements regardless of whether they remembered doing so or had negotiated the terms. Here, there is no evidence Plaintiffs signed an agreement to arbitrate.

The Court has reviewed the record before it, including the terms and conditions for the plans as set forth in the exhibits and the Member Guide, and finds there is not an enforceable agreement to arbitrate and the Motion to Dismiss and Compel Arbitration should be denied. First, the documents signed by Plaintiffs, see for example Docs. 38-2, 38-4, and 38-6, do not reference arbitration or contain an arbitration provision. Instead, the forms contain a section entitled "Membership Guideline Details" that reference that each member is responsible for reviewing the HCSM Guidelines "provided at the time of enrollment." However, from the record before the Court, the documents reflect that it is only after a member has completed the online forms that "as part of the membership" Plaintiffs receive a copy of the Member Guide. See *Id.* and Doc. 38-1. There is no evidence Plaintiffs received, reviewed, or specifically acknowledged the specific terms of the Member Guide when they electronically signed the online forms to become a member. See e.g. Doc. 38-2. At best, Plaintiffs acknowledge the Member Guide in the 15 page online application that repeatedly states the signed document "is not a contract." See Doc. 38-2 pp. 3, 4, 6, and 7. In fact, Plaintiffs allege it was after they enrolled and made the initial payments that they received the Member Guide. Doc. 30, ¶ 69. Further after Plaintiffs enrolled online, Defendants inform the members that their membership packets will arrive within 10-14 business

9

days after payment. See Doc. 38-2. There is nothing in the record showing Plaintiff's signed, or even reviewed, the Member Guide upon their enrollment with Defendants. Defendants argue that the Member Guides "impose several obligations on the members' part," including the dispute resolution procedures. However, Defendants fail to establish how there was a mutually accepted contract formed between the parties regarding the agreement to arbitrate. Defendants argue that Plaintiffs signed a document (that repeatedly states is not a contract) that provides the Member Guidelines would govern. However, there is no evidence Plaintiffs were actually provided the Member Guidelines until after they signed the online form.

The Court finds the dispute resolution "agreement" lacks offer, acceptance, and bargained for consideration. Here, without reaching the issue as to whether the plans qualify as insurance, the Court finds the arbitration agreement is unenforceable.

### 2. Motion to Dismiss Pursuant to 12(b)(1) and 12(b)(6)

#### A. Plaintiff Boogher

Defendant Trinity argues that Plaintiff Boogher lacks standing because he has not alleged an "injury in fact" traceable to Trinity. Trinity argues Boogher's claims are speculative and are insufficient to show an injury in fact traceable to Trinity. "Federal jurisdiction is limited by Article III, § 2, of the U.S. Constitution to actual cases and controversies." *Steger v. Franco, Inc.*, 228 F.3d 889, 892 (8th Cir. 2000). A plaintiff's standing is a threshold question in every case that affects the court's power to hear the suit. *Id.* "To show Article III standing, a plaintiff has the burden of proving: (1) that he or she suffered an 'injury-in-fact,' (2) a causal relationship between the injury and the challenged conduct, and (3) that the injury likely will be redressed by a favorable decision." *Id.*, citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). An injury-in-fact exists where the plaintiff has sustained, or is in immediate

danger of sustaining, a concrete and particularized harm that is "actual or imminent, not conjectural or hypothetical." *Id.*

Here, Plaintiff Boogher alleges he paid thousands of dollars in premiums for a worthless insurance product. Defendant Trinity argues because Boogher has not been denied a claim, rather he alleges he fears he will be denied, that the injury-in-fact is speculative. Plaintiff argues in response that he has alleged he has paid monthly premiums for illegal insurance that was sold with misrepresentations. The complaint alleges Boogher paid $803.89 per month and now pays $936.52 per month and has paid over $19,000.00 to Aliera. He further alleges Defendants have failed to comply with Missouri and federal insurance laws in their provision of benefits. Doc. 30 ¶ 81-82. Boogher claims he has not been notified that any of his health care contributions have been used to pay other members' health care costs. *Id.* at ¶ 83. Boogher further alleges that "although [he] has been fortunate in not having to receive any health care services that exceed his $1,000 MSRA since enrolling in the Aliera and/or Trinity plans, he has been advised that he will need hip replacement surgery…. He has a reasonable fear, based on the experience of many other members in Defendants' health care products, that Defendants will not authorize his hip replacement surgery…" *Id.* ¶ 84.

Here, the Court finds Plaintiff has alleged a sufficient injury in order to survive the motion to dismiss and denies the motion.

### B. Motion to Dismiss for Failure to State a Claim

Finally, Trinity argues Plaintiffs' claims should be dismissed because they fail to state a claim for violation of the MMPA for failure to meet the pleading requirements of Rule 9(b) and that any such claims are barred by Missouri statutes regarding the licensing and regulation of insurance. After reviewing the record before the Court, including the 35 page complaint, the Court

11

Case 3:20-cv-05038-MDH   Document 62   Filed 11/23/20   Page 11 of 12

finds Trinity is on notice of the allegations pending against it and that Plaintiffs have pled a claim under the MMPA to survive a motion to dismiss.  The Court also finds Plaintiffs have pled enough regarding their claim for breach of fiduciary duty and unjust enrichment to survive a motion to dismiss.  Whether Plaintiffs may ultimately prevail on their claims is not the issue before the Court.  Rather, whether Plaintiffs have pled enough to survive a motion to dismiss is the issue and the Court finds Plaintiffs have pled enough to proceed with their claims against Defendants and the allegations meet the federal notice pleading requirement.

## CONCLUSION

For the reasons set forth herein, Defendants' Motions (Docs. 38 and 39) are denied.  Further, Defendants' Motion to Stay (Doc. 43) is denied as moot.

**IT IS SO ORDERED.**

Dated:  November 23, 2020        */s/ Douglas Harpool*
                          **DOUGLAS HARPOOL**
                          **UNITED STATES DISTRICT JUDGE**